Breitel, J.
Petitioner appeals, and the Attorney-General cross-appeals, from an order of the Appellate Division, which reversed in a memorandum opinion (one Justice dissenting), a decree of the Surrogate’s Court, Kings County, declining to release certain impounded funds. Involved is the effect of former section 269-a of the Surrogate’s Court Act (now SOPA 2218), which provided that where the beneficiary of a decedent estate ‘ ‘ would not have the benefit or use or control of the money or other property due him,” such property is to be paid into court ‘[1] for the benefit of [such beneficiary] or such person or persons who may thereafter appear to be entitled thereto.”
Petitioner applied to the Surrogate’s Court for an order directing that a default judgment he had previously obtained in the Supreme Court, Kings County, against Dvaireh (or Davareh as in the title) Kaminsky, a resident of the Soviet Union and a distributee of the decedent estate of one Sam Leikind, be satisfied out of funds deposited with the Director of Finance of the City of New York pursuant to the above statute. The Surrogate denied relief and the Appellate Division reversed, but granted a stay to allow the Attorney-General to seek appropriate relief in the Supreme Court from the default judgment. Petitioner appeals from so much of the Appellate Division order as granted the stay; the Attorney-General appeals from so much of the order as reversed the Surrogate’s decree.
Dvaireh Kaminsky’s share of the estate of Sam Leikind had been deposited with the Director of Finance pursuant to a decree of the Surrogate’s Court dated October 19, 1961. Subsequent to this decree, petitioner, a brother of decedent and Dvaireh, who was also the administrator of the estate, brought an action against Dvaireh in the Supreme Court for moneys owed. His claim was apparently based on a letter he had received from his sister which acknowledged her prior promise to repay money he had previously sent her and suggested that he try to obtain the money out of her inheritance. Jurisdiction over Dvaireh in the action was obtained by attachment of the funds on deposit and service was effected through publication. No answer or appearance was interposed. Judgment on default was entered on May 18, 1964 in the sum of $7,308.
*350 Petitioner sought to satisfy the judgment out of the impounded funds but the Director of Finance refused to honor the Sheriff’s levy. Petitioner then moved in the Supreme Court for an order requiring the Director of Finance to release the funds. The motion was denied, with leave to petitioner to apply to the Surrogate for such an order. In denying the application to him the Surrogate held that the effort to procure the funds was intentionally evasive of the statute, and that, in any event, since Dvaireh had no power to obtain the funds, she also lacked power to accomplish their reach by another. The Appellate Division held that the impounded funds were subject to attachment and that the Attorney-General, in effect, was mounting a collateral attack on the Supreme Court judgment.
Petitioner argues that in view of the recent Supreme Court decision in Zschernig v. Miller (389 U. S. 429, decided Jan. 15, 1968), holding unconstitutional an Oregon statute somewhat similar to New York’s statute, there is no basis for denying the release of the funds. The Attorney-General, on the other hand, contends that (1) the default judgment constituted an evident attempt to evade the statute and was, therefore, a nullity; (2) Zschernig v. Miller is inapplicable to the New York statute; and (3) in any event, the constitutionality of the New York statute is not properly raised for the first time in this court.[1]
There are two issues: (1) whether the impounding of the funds here violated the Federal Constitution under the ruling of the Zschernig case; and (2) whether the Surrogate’s finding that the default judgment could not support a release of the funds was an abuse of discretion. It is concluded that the impounding of the funds was not unconstitutional, but the matter should be remanded to the Surrogate for a hearing and further findings as to the effect to be given the default judgment.
In Zschernig v. Miller (supra) the Supreme Court considered the constitutionality of an Oregon statute similar in some respects to the New York statute. Oregon’s statute provided for escheat of property claimed by a nonresident-alien distributee of an estate unless (1) American citizens had a right to take property in the foreign country on the same terms as *351 residents of the foreign country; (2) American citizens had a reciprocal right to .receive funds from estates in the foreign country; and (3) the foreign distributee would have the “ benefit, use or control ’ ’ of property from the estate of the American deceased. The Supreme Court found that in applying each of the requirements the Oregon courts had improperly intruded into the field of foreign affairs reserved to the Federal executive and legislature.
The majority opinion deliberately refrained from re-examining its decision in Clark v. Allen (331 U. S. 503), which, had held that a California statute, containing a reciprocity requirement similar to that in Oregon, was not unconstitutional on its face. Of Clark v. Allen (supra) it said, “ The case seemed to involve no more than a routine reading of foreign laws ” (389 U. S., supra, p. 433). It observed, however, that under the Oregon statute the courts had in fact “ launched inquiries into the type of governments that obtain in a particular foreign nation ” and had conducted “minute inquiries concerning the actual administration of foreign law ” (id., pp. 434, 435). It concluded, therefore, that the application of the Oregon statute resulted in an unconstitutional involvement by the State in foreign affairs. There was no explicit condemnation of the statute on its face.
Despite some similarities, the Oregon and New York statutes are different. The New York statute, unlike the one in Oregon, contains no provision for reciprocity or escheat. The acceptance of a reciprocity provision in Clark v. Allen (supra), evidently reaffirmed in the Zschernig case, is, therefore, of little help in resolving the issues in this case. On the other hand, the absence of an escheat provision in the New York statute, even though the Oregon escheat provision was not discussed or made a ground of decision by the Supreme Court, may be of critical importance in sustaining the validity of New York’s statute, at least on its face.
Moreover, the majority opinion in the Zschernig case, in accepting the constitutionality of ‘ ‘ reciprocity, ’ ’ arguably accepted “ benefit, use or control ” provisions as valid, provided State courts did no more than “ routinely read” foreign laws and provided there was no palpable interference with foreign *352 relations in their application.[2] Thus, if the courts of this State, in applying the “ benefit or use or control ” requirements, simply determine, without animadversions, whether or not a foreign country, by statute or otherwise, prevents its residents from actually sharing in the estates of New York decedents, the statute would not be unconstitutional under the explicit rationale of the Zschernig case. Indeed, petitioner has made no showing that the lower courts in this case have currently engaged in the conduct criticized, and additionally illustrated in the footnotes of the Zschernig case, as interference with foreign relations. Consequently, there is no present warrant to reconsider the earlier rulings of this court sustaining the constitutionality of the statutes which preceded the present one (Matter of Marek, 11 N Y 2d 740, app. dsmd. sub nom. Ioannou v. New York, 371 U. S. 30 [for want of a substantial Federal question] ;[3] Matter of Braier, 305 N. Y. 148, 156, app. dsmd. sub nom. Kalmane v. Green, 346 U. S. 802).
Thus, the impounding of Dvaireh’s share in the estate was not proscribed under the principles thus far made explicit in the Zschernig and Clark cases. Nevertheless, the applicable New York statute does not necessarily require that the funds be restricted until it is determined that the beneficiary himself *353 will have “ benefit or Use or control ” of them. The funds are also impounded “ for the benefit of * * * such person or persons who rhay thereafter appear to be entitled thereto.” Hence, it must be determihed whether petitioner, by virtue of his status as judgment creditor of Dvaireh, is a person entitled to the funds.
Funds which are in custodia let/is, and in which the owner has a present interest, may be attached or garnished for purposes of obtaining jurisdiction (Dunlop v. Patterson Fire Ins. Co., 74 N. Y. 145, 148 [funds deposited in court by defendant as an undertaking on appeal could be attached by a claimant of defendant]; cf. Commission for Polish Relief v. Banca Nationala a Rumaniei, 288 N. Y. 332, 338, affg. 262 App. Div. 543, 546 [citing the Rúnlop case and holding that funds of defendant Rumanian bank deposited in New York banks, which could not be transferred or withdrawn under the terms of an Executive Order, could be attached by a resident claimant of the Rumanian bank]; see Ann.— Funds in Court—Garnishment, 1 ALR 3d 936, 944, 945; but see 7 C. J. S. Attachment, § 88, p. 260). In the Dunlop and Polish Relief cases it was held that the owner of the funds, although not now entitled to receive them, had a sufficient right and interest in the property to enable a claimant to obtain jurisdiction quasi in rem through attachment. Thus, in this matter the Supreme Court had acquired such jurisdiction, and, upon the defendant’s default, had the power to enter judgment in favor of petitioner.
Further, although the judgment did not automatically entitle petitioner to satisfaction out of the impounded funds, sUch satisfaction could be obtained when the purposes of the restraint had been achieved or upon a determination that such satisfaction would no longer interfere with the purposes of the restraint (First Nat. Bank of Oswego v. Dunn, 97 N. Y. 149, 158-159; Wehle v. Conner, 83 N. Y. 231, 236-237; Hardon v. Dixon, 91 App. Div. 109, 113-114; cf. Commission for Polish Relief v. Banca Nationala a Rumaniei, 288 N. Y. 332, 338, supra).
It is concluded, therefore, that, on the present record and with the present parties, petitioner’s judgment is both legally effective and valid, albeit not without restriction as to enforcement out of the impounded funds. The Surrogate might yet order satisfaction from the impounded funds if he first deter *354 mined that such satisfaction would not conflict with the provisions or the purposes of the statute.
The statute’s primary purpose is to prevent the transmission of funds to a beneficiary in a foreign country where such transmission ‘ ‘1 might be circumvented by confiscation in whole or in part ’ ” (Matter of Braier, 305 N. Y. 148, 154, supra; L. 1939, ch. 343, bill note, p. 795). This court has held that an assignment by the nonresident owners of the impounded funds is inconsistent with the statutory purpose (Matter of Geiger, 7 N Y 2d 109,112). The court reasoned that the owners had already been determined not to have control over the funds for the time being, and thus were in no position to direct their disposition. However, and this is significant in the context of this case, the court excepted from its holding the possibility of proceedings by the assignee based on a valid claim for compensation for legal services rendered to the nonresident owners in connection with the estate (supra, p. 112). Thus, there is no rule completely immunizing the impounded funds from all obligations derived from the distributee. Only those obligations are excluded which rest solely on the voluntary transfer by, or commitment of, the distributee in contradiction of his disability to control the fund.
On the other hand, the fact that the judgment creditor is a New York resident and, therefore, arguably there is no risk that the funds will leave the country, is not conclusive. It is conceivable that a court might find the submission to the default judgment did not result from a “ voluntary ” acceptance by the distributee of her obligation to her brother or would not result in actual payment to and retention by the brother. The present record contains no evidence of any such situation, but neither does it establish that the default judgment was the result of benefits conferred on the distributee or was even a bona fide gift to her brother.
In short, on the present record, a final disposition would be premature. The Surrogate doubted the bona fides of the default judgment, and also held that if Dvaireh could not receive the funds herself she could not permit them to be obtained by a creditor. The doubt was based on the papers alone. It is, therefore, necessary that the matter be remanded to enable the Surrogate to hold a hearing and make further findings concerning whether the underlying debt was a genuine one, in the sense *355 that it was derived from an actual benefit to the distributee on a promise to pay, or was even a bona fide gift, and whether payment therefor to the judgment creditor would be solely for his use or benefit and would not be used directly or indirectly to defeat the purposes of the statute.
This is not to say that the Surrogate could ‘ ‘ invalidate ’ ’ the Supreme Court judgment should he determine that its enforcement out of the funds would not achieve the purposes of the statute. Even assuming he found that the judgment was obtained in an attempt to avoid the statute, and thus could not be enforced against the impounded funds at this time, the judgment would still have legal validity so long as it was not vacated in a direct attack. It could be enforced, for example, against the impounded funds should changed circumstances render such enforcement consonant with the statutory purpose. In addition, if Dvaireh had chosen to appear in the Supreme Court action, resulting in a default judgment in personam rather than quasi in rem, a similar determination by the Surrogate that the impounded funds could not now be used for satisfaction of the judgment would not prevent its satisfaction out of other property belonging to Dvaireh which petitioner might be able to locate. Thus the Surrogate is not being called upon to determine the validity of the judgment, but rather whether satisfaction out of the funds in his care at this time conforms to the purposes of the statute.
Accordingly, the order of the Appellate Division should be reversed and the matter remanded to the Surrogate for a hearing and further findings, with costs to abide the event.

. But see Cohen and Karger, Powers of the New York Court of Appeals. §§ 168, 169.

. Although the sweep of the opinion might suggest to some that in a later case the court might hold that in reality no such statute could ever be restricted to a “ routine reading ”. (Also, see concurring opn. by Stewart and Brennan, JJ., finding the Oregon statute unconstitutional on its face [389 U. S. 429, 442].)

. The Supreme Court recently entertained an application by the petitioner in Ioannou v. New York (supra) for rehearing and asked the State Attorney-General to file an answer (390 U. S. 1009). The petition has since been denied on representations by the State Attorney-General as to further procedure available in the State (391 U. S. 604). It must be noted that certain of the examples cited by the Supreme Court in the Zschernig case as prohibited conduct purportedly occurred in New York courts (389 U. S., p. 437, n. 8). Further, the Sureme Court in Goldstein v. Cox (389 U. S. 581) ordered that in light of Zschernig v. Miller (supra) petitioner’s application for the convening of a three-Judge Federal District Court to determine the constitutionality of the New York statute be granted. (See, also, Matter of Lehotzky, N. Y. L. J., Jan. 29, 1968, p. 18, col. 7, in which the Surrogate of Bronx County held the New York statute unconstitutional under the Zschernig case. But see, also, Matter of Harmoza, 57 Misc 2d 40.)