Anghel GOLDSTEIN, also known as An-
drei Pietraru, Iuliu Nasta, also known
as Iulius Nasta and Gheorghe Fundi,
on behalf of themselves and all others
similarly situated, Plaintiffs,

v.

Joseph A. COX and S. Samuel DiFalco,
Surrogates of the County of New York,
Edward S. Silver, Surrogate of the
County of Kings, Christopher C. Mc-
Grath, Surrogate of the County of
Bronx, John T. Clancy, Surrogate of
the County of Queens and Arthur Lev-
itt, Comptroller of the State of New
York, Defendants.

No. 66 Civ. 4487.

United States District Court
S. D. New York.

Dec. 18, 1968.

John R. Vintilla, Cleveland, Ohio,
Emanuel Eschwege, New York City, No-
vak N. Marku, Canton, Ohio, for plain-
tiffs.

Louis J. Lefkowitz, Atty. Gen. of the
State of New York, New York City, for
defendants; Daniel M. Cohen, Asst.
Atty. Gen., of counsel.

Before KAUFMAN, Circuit Judge,
McLEAN and TENNEY, District
Judges.

McLEAN, District Judge.

The three plaintiffs in this action are
nationals and residents of Rumania.
They sue "on behalf of themselves and
all other residents of Romania, similarly
situated" for a judgment declaring that
Section 2218 of the New York Surro-
gate's Court Procedure Act, formerly
Section 269–a of the Surrogate's Court
Act, is unconstitutional.* They also seek

---

\* This statute now reads as follows:
    "1. (a) Where it shall appear that an
alien legatee, distributee or beneficiary
is domiciled or resident within a country

to which checks or warrants drawn
against funds of the United States may
not be transmitted by reason of any
. executive order, regulation or similar

an injunction restraining five New York Surrogates and the Comptroller of the State of New York from enforcing and applying it.

The prior history of this action may be briefly stated. In the spring of 1967 plaintiffs moved for an order convening a three-judge court pursuant to 28 U.S. C. § 2281. They also moved for an injunction pendente lite. The district court denied the preliminary injunction. It also denied the request for a three-judge court on the ground that, although a substantial federal question was raised, this question was one of federal "supremacy" which, under Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), was to be decided by one judge, not by three. Goldstein v. Cox, 66 Civ. 4487 (S.D.N.Y. April 4, 1967).

On September 27, 1967, the Court of Appeals, from the bench, affirmed the order of the district court. The Supreme Court, however, vacated the order of the Court of Appeals and remanded the case to the Court of Appeals "for further consideration in light of Zschernig v. Miller." (389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968).)

Goldstein v. Cox, 389 U.S. 581, 88 S.Ct. 694, 19 L.Ed.2d 781 (1968).

The Court of Appeals thereupon reversed the order of the district court and remanded the case for consideration of the constitutional issues by a three-judge court. Goldstein v. Cox, 391 F.2d 586 (2d Cir. 1968).

Plaintiffs then moved for summary judgment. That is the motion which we are now called upon to decide.

The motion is supported only by an affidavit of plaintiffs' attorney which is devoted primarily to a discussion of the law. It contains few facts. As to plaintiff Goldstein, it says only:

"The Surrogate, in the judicial settlement in the Estate of Maurice Siegel, wherein the rights of plaintiff, Anghel Goldstein are involved, decreed:

'Ordered, Adjudged and Decreed that the distributive share to which the said Angel Goldstein is entitled be paid into this Court by depositing the sum of $2,230.40 with the Treasurer of the City of New York to the credit of this proceeding, and the Treasurer of the City of New York hereby is directed to deposit

determination of the United States government or any department or agency thereof, the court shall direct that the money or property to which such alien would otherwise be entitled shall be paid into court for the benefit of said alien or the person or persons who thereafter may appear to be entitled thereto. The money or property so paid into court shall be paid out only upon order of the surrogate or pursuant to the order or judgment of a court of competent jurisdiction.

(b) Any assignment of a fund which is required to be deposited pursuant to the provisions of paragraph one (a) of this section shall not be effective to confer upon the assignee any greater right to the delivery of the fund than the assignor would otherwise enjoy.

2. Where it shall appear that a beneficiary would not have the benefit or use or control of the money or other property due him or where other special circumstances make it desirable that such payment should be withheld the

decree may direct that such money or property be paid into court for the benefit of the beneficiary or the person or persons who may thereafter appear entitled thereto. The money or property so paid into court shall be paid out only upon order of the court or pursuant to the order or judgment of a court of competent jurisdiction.

3. In any such proceeding where it is uncertain that an alien beneficiary or fiduciary not residing within the United States, the District of Columbia, the Commonwealth of Puerto Rico or a territory or possession of the United States would have the benefit or use or control of the money or property due him the burden of proving that the alien beneficiary will receive the benefit or use or control of the money or property due him shall be upon him or the person claiming from, through or under him."

Section 1 was added by Ch. 998 of the Laws of 1968 which became effective on June 22, 1968, after the motion now under consideration was made.

said sum of $2,230.40 in any savings bank located in the County of Bronx for the benefit of said Angel Goldstein and subject to the further order of this court, and it is further'."

The affidavit contains a similar statement as to plaintiff Fundi, reading as follows:

"The defendant, Surrogate Samuel DiFalco, in the estate of Jerotheos Stavrou, in which plaintiff, George Fundi is a distributee, in settling said estate, ordered (NYLJ, 8/3/65), pertinent hereto, as follows:

'Any sum payable to legatees or distributees in Rumania will be deposited in court pursuant to section 269-a of the Surrogate's Court Act (Matter of Greenberg, NYLJ, June 16, 1964 (Cox, S.), aff'd App.Div. 1st Dept. NYLJ.'"

The text of the affidavit does not refer to plaintiff Nasta. Annexed to the affidavit, however, are copies of letters from the office of the New York Comptroller dated respectively February 28, 1962 and November 16, 1964, the first of which is addressed to Juliu Nasta in Bucharest, Rumania, and the second to plaintiffs' attorney. Each letter is captioned:

"NASTA, JULIU
Atty-in-Fact for
Opreana Comanicu
J. P. Morgan & Co.
Acct. BD#47801
Abandoned Property"

There is no explanation of what the "abandoned property" is, how it came to be abandoned, or whether it has any connection with the statute here under consideration. In each letter the Comptroller's Office stated in substance that pursuant to a policy recommended by the New York Attorney General, the Comptroller was not in a position to make payment to residents of Rumania.

The only other factual material submitted in support of this motion consists of a copy of a letter dated October 15, 1965 from the then Surrogate of Kings County to Isac Silianu (not a plaintiff) in Bucharest, Rumania, and copies of five letters from the office of the New York Comptroller bearing various dates in 1962, 1963 and 1966, one of which is addressed to Borbala Barbieri (not a plaintiff) in Bucharest, Rumania, and the others to the same attorney who represents the plaintiffs in this action.

The Surrogate's letter stated in substance that if Isac Silianu were to make formal application for the payment of his bequest in full, the Surrogate would be constrained to deny it, but that the Surrogate would give "sympathetic consideration to a request for transmittal to you in periodic installments of small sums for purchase of food and clothing parcels, if a demonstration can be made of the feasability thereof.".

The Comptroller's letters were each headed "Abandoned Property." Two of them indicate that the property consists of an account in J. P. Morgan & Co. The other three refer to "Prunder, Denette, Estate of." In each letter the Comptroller's office in substance declined to pay a claim of a resident of Rumania or of individuals within the jurisdiction of the Soviet Union.

The motion is opposed by an affidavit of an Assistant Attorney General of New York. That affidavit is entirely argumentative. It can fairly be said to contain no facts at all.

On this record we are asked to hold as a matter of law that Section 2218 is unconstitutional because it interferes with the exclusive prerogative of the federal government to conduct the foreign affairs of the United States. Plaintiffs claim that this result is required by the Supreme Court's decision in *Zschernig*.

The validity of the statute, as it read at the time, was twice upheld by the New York Court of Appeals prior to *Zschernig*. Matter of Braier, 305 N.Y. 148, 111 N.E.2d 424 (1953), appeal dismissed sub nom. Kalmane v. Green, 346 U.S. 802, 74 S.Ct. 32, 98 L.Ed. 334 (1953); Matter of Marek, 11 N.Y.2d 740, 226 N.Y.S.2d 444, 181 N.E.2d 456 (1962), appeal dismissed sub nom. Ioannou v.

New York, 371 U.S. 30, 83 S.Ct. 6, 9 L. Ed.2d 5 (1962). In each case the Supreme Court dismissed the appeal from the New York Court of Appeals' decision for want of a substantial federal question. As far as appears from the Court of Appeals' opinion in *Braier* and from the memorandum in *Marek* (in which no opinion was written), the ground upon which the constitutionality of the statute is challenged in the present action was not raised or decided in either case.

Recently the unsuccessful claimant in *Marek* (Ioannou) moved in the Supreme Court for leave to file a petition for rehearing. The Supreme Court denied the motion "upon the representation of the Attorney General of New York that the movant may file a new application 'to withdraw the funds deposited with the New York City Treasurer' in the light of changed circumstances. See Zschernig v. Miller, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683; Goldstein v. Cox, 389 U.S. 581, 88 S.Ct. 694, 19 L.Ed.2d 781." Ioannou v. New York, 391 U.S. 604, 88 S.Ct. 1864, 20 L.Ed.2d 843 (1968).

In *Zschernig*, the Supreme Court had before it an Oregon statute which provided in substance that property of an Oregon decedent which would otherwise pass by succession or testamentary disposition to a nonresident alien would, in the absence of other eligible heirs, devisees or legatees, escheat to the state of Oregon unless the alien proved (1) the existence of a reciprocal right of a United States citizen to take property on the same terms as a citizen or inhabitant of the foreign country; (2) the right of United States citizens to receive payment here of funds from estates in the foreign country; and (3) the right of the alien to receive the benefit, use or control of the proceeds of Oregon estates, "without confiscation" by the government of his country. The Court held this statute unconstitutional because it impaired "the effective exercise of the Nation's foreign policy." 389 U.S. at 440, 88 S.Ct. at 671.

Subsequent to this decision, the New York Court of Appeals again considered the constitutionality of Section 2218 and, despite *Zschernig*, declined to hold the statute unconstitutional on the record before it. Matter of Leikind, 22 N.Y.2d 346, 292 N.Y.S.2d 681, 239 N.E. 2d 550 (1968).

We are called upon to decide whether, on the record now before us, we are impelled to a conclusion similar to, or different from, the conclusion which the New York Court of Appeals reached in *Leikind*.

The decision depends upon the reasons given by the Supreme Court in *Zschernig* for invalidating the Oregon statute. Before considering those reasons, however, mention must be made of an earlier Supreme Court decision, Clark v. Allen, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947).

In *Clark*, the Court passed upon a California statute which contained reciprocal provisions substantially identical with the first two requirements in the Oregon statute, but which did not contain the benefit, use and control requirement. The Court upheld the constitutionality of the California statute as against a claim that it constituted an interference by the state of California in the field of foreign affairs.

In *Zschernig*, the Supreme Court expressly declined to overrule Clark v. Allen. Instead, it distinguished it, saying:

> "We were there concerned with the words of a statute on its face, not the manner of its application." 389 U.S. at 433, 88 S.Ct. at 667.

The Court went on to point out that state courts frequently construe and apply the laws of foreign nations and that:

> "It has never been seriously suggested that state courts are precluded from performing that function, albeit there is a remote possibility that any holding may disturb a foreign nation * * *." 389 U.S. at 433, 88 S.Ct. at 667.

But the Court said:

> "It now appears that in this reciprocity area under inheritance statutes, the probate courts of various

States have launched inquiries into the type of governments that obtain in particular foreign nations * * *." 389 U.S. at 433–34, 88 S.Ct. at 553. The Court pointed out that the Oregon statute added to the requirement of reciprocity a new concept of confiscation and that this had "led into minute inquiries concerning the actual administration of foreign law * * *." 389 U.S. at 435, 88 S.Ct. at 668. The Court documented this statement by quoting intemperate remarks contained in opinions of state court judges, such as, "Russia kicks the United States in the teeth all the time," and the like. 389 U. S. n. 8 at 437, 88 S.Ct. at 669. The Court said that the Oregon statute "as construed seems to make unavoidable judicial criticism of nations established on a more authoritarian basis than our own." 389 U.S. at 440, 88 S.Ct. at 670.

The Court concluded that:

"It seems inescapable that the type of probate law that Oregon enforces affects international relations in a persistent and subtle way." 389 U.S. at 440, 88 S.Ct. at 670.

On this basis the Court held the Oregon statute unconstitutional.

Two justices concurring in a separate opinion stated that, while joining the opinion of the Court, they would go further and hold the Oregon statute unconstitutional on its face. Obviously, it was manifest to these two justices, as it is to us, that the opinion of the Court did not go this far, but held only that the Oregon statute was unconstitutional because of the manner of its application.

In *Leikind*, the New York Court of Appeals read the opinion of the Court in *Zschernig* as a decision dealing with the application of the statute by the Oregon courts. The Court of Appeals held that in the case before it there was no showing that "the lower courts in this case have currently engaged in the conduct criticized, and additionally illustrated in the footnotes of the *Zschernig* case, as interference with foreign relations." Consequently, said the court, "there is no

present warrant to reconsider the earlier rulings of this court sustaining the constitutionality of the statutes which preceded the present one [*i. e., Braier* and *Marek, supra*]." 22 N.Y.2d at 352, 292 N.Y.S.2d at 686, 239 N.E.2d at 553.

The Court of Appeals recognized the possibility that the Supreme Court might extend the *Zschernig* rule in the future. Thus, it said that in *Zschernig*, the Supreme Court "arguably accepted 'benefit, use or control' provisions as valid, provided State courts did no more than 'routinely read' foreign laws and provided there was no palpable interference with foreign relations in their application." 22 N.Y.2d at 351–52, 292 N.Y.S.2d at 685, 239 N.E.2d at 553. But the court conceded that "the sweep of the opinion might suggest to some that in a later case the court might hold that in reality no such statute could ever be restricted to a 'routine reading'." 22 N.Y.2d n. 2 at 352, 292 N.Y.S.2d at 685, 239 N.E.2d at 553.

In the case before us there is no showing that the New York courts have engaged in the conduct criticized in *Zschernig*. There is no showing and not even any claim that the New York courts have uttered any animadversions concerning Rumania. All we are told is that two New York Surrogates have directed that the distributive shares of plaintiffs Goldstein and Fundi in New York estates be deposited in court, pursuant to the statute, and that the office of the New York Comptroller has declined to turn over certain "abandoned properties" to persons resident in Rumania or in territories within the jurisdiction of the Soviet Union. We are not informed as to what investigation, if any, preceded these judicial and administrative decisions.

We conclude that this record is inadequate to justify this court in holding, summarily, that Section 2218 is unconstitutional under the *Zschernig* rule. Without any evidence whatever as to how Section 2218 has been applied in this case, we are unable to say that it has been applied in such a way as to in-

terfere with the foreign relations of the United States. We interpret the Supreme Court's recent ruling denying a rehearing in *Ioannou* as at least an indication that evidence of improper application of the statute is necessary.

We appreciate that the Supreme Court may eventually go further than it has thus far gone and that it may eventually hold that all benefit, use and control statutes are invalid regardless of how the state courts have applied them. But we conceive it to be our duty to enforce the law as it is, not as it may be in the future.

Accordingly, the motion for summary judgment is denied.

So ordered.