GOLDSTEIN, AKA PIETRARU, ET AL. *v.* COX ET AL.

No. 66.   Argued November 17, 1969—Decided January 26, 1970

*John R. Vintilla* argued the cause for appellants. With him on the brief were *Emanuel Eschwege* and *Novak N. Marku.*

*Daniel M. Cohen,* Assistant Attorney General of New York, argued the cause for appellees. With him on the brief were *Louis J. Lefkowitz,* Attorney General, and *Samuel A. Hirshowitz,* First Assistant Attorney General.

*Martin Popper* filed briefs for Wolf Popper Ross Wolf & Jones as *amicus curiae.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Appellants are beneficiaries of New York decedents' estates who live in Romania. Their shares of these estates have not been distributed to them, but have been paid into court for their benefit under § 2218 of the New York Surrogate's Court Procedure Act. Section 2218 authorizes the surrogate to order an alien's share of a New York estate paid into court when it appears that the alien "would not have the benefit or use or control of the money or other property" constituting the share.[1]

In 1966, appellants filed a complaint in the United States District Court for the Southern District of New York, challenging what is now § 2218 on the grounds that it denied them due process and equal protection, that it unconstitutionally intruded upon the Federal Government's conduct of foreign relations, and that it conflicted

---

[1] Section 2218 (Supp. 1969), formerly § 269-a of the New York Surrogate's Court Act, reads as follows:

"1. (a) Where it shall appear that an alien legatee, distributee or beneficiary is domiciled or resident within a country to which checks or warrants drawn against funds of the United States may not be transmitted by reason of any executive order, regulation or similar determination of the United States government or any department or agency thereof, the court shall direct that the money or property to which such alien would otherwise be entitled shall be paid into court for the benefit of said alien or the person or persons who thereafter may appear to be entitled thereto. The money or property so paid into court shall be paid out only upon

with federal regulations permitting the payment of federal funds to persons in Romania. Appellants prayed for both temporary and permanent injunctive relief against further operation of the statute, and therefore requested the impaneling of a three-judge court. A single district judge declined to request a three-judge court on the ground that the constitutional questions raised were frivolous, and the Court of Appeals for the Second Circuit affirmed. This Court granted certiorari, vacated the judgment, and remanded the case to the Court of Appeals for further consideration in the light of *Zschernig* v. *Miller*, 389 U. S. 429, decided the same day. 389 U. S. 581 (1968). On remand, the Court of Appeals reversed the original order of the District Court, and remanded the case for consideration by a three-judge court. 391 F. 2d 586 (C. A. 2d Cir. 1968).

order of the surrogate or pursuant to the order or judgment of a court of competent jurisdiction.

"(b) Any assignment of a fund which is required to be deposited pursuant to the provisions of paragraph one (a) of this section shall not be effective to confer upon the assignee any greater right to the delivery of the fund than the assignor would otherwise enjoy.

"2. Where it shall appear that a beneficiary would not have the benefit or use or control of the money or other property due him or where other special circumstances make it desirable that such payment should be withheld the decree may direct that such money or property be paid into court for the benefit of the beneficiary or the person or persons who may thereafter appear entitled thereto. The money or property so paid into court shall be paid out only upon order of the court or pursuant to the order or judgment of a court of competent jurisdiction.

"3. In any such proceeding where it is uncertain that an alien beneficiary or fiduciary not residing within the United States, the District of Columbia, the Commonwealth of Puerto Rico or a territory or possession of the United States would have the benefit or use or control of the money or property due him the burden of proving that the alien beneficiary will receive the benefit or use or control of the money or property due him shall be upon him or the person claiming from, through or under him."

Appellants then moved for summary judgment, urging that § 2218 was unconstitutional, either on its face or as applied, under the principles of *Zschernig* v. *Miller, supra*. In their motion they requested "the relief demanded in the complaint." They accompanied their motion with an affidavit, largely consisting of a memorandum of law arguing that the application of § 2218 by the New York courts ran afoul of *Zschernig*.

Appellees, surrogates of several New York counties, opposed the motion for summary judgment and further requested that the action be dismissed. In their accompanying affidavit, they argued that § 2218 was constitutional on its face and that there was at least a triable issue of fact whether it was being constitutionally applied.

The District Court denied summary judgment, but did not dismiss the action. 299 F. Supp. 1389 (D. C. S. D. N. Y. 1968). In its opinion it held that § 2218 was not unconstitutional on its face under *Zschernig,* and that the only reported post-*Zschernig* construction of the statute, *Matter of Leikind,* 22 N. Y. 2d 346, 239 N. E. 2d 550 (1968), app. docketed, No. 68, O. T. 1969, did not show unconstitutional application.

From the order denying summary judgment, appellants took an appeal to this Court, claiming that we had jurisdiction under 28 U. S. C. § 1253, which provides:

> "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

Appellees did not oppose jurisdiction, but rather filed a motion to affirm. We noted probable jurisdiction, 394

U. S. 996 (1969), and received briefs and heard argument confined to the merits. Further examination of the case since oral argument has for the first time raised the question of our jurisdiction, and we have concluded that we lack jurisdiction of the appeal.

A preliminary question is whether the District Court's order denying summary judgment to a plaintiff who has requested injunctive relief is "an order . . . denying . . . an . . . injunction" within the meaning of § 1253. In construing the analogous provision giving the courts of appeals jurisdiction to hear appeals from interlocutory orders granting or denying injunctions, 28 U. S. C. § 1292 (a)(1), this Court has ruled that a denial of summary judgment is not an appealable order denying an injunction, at least where the denial is based upon the existence of a triable issue of fact. *Switzerland Assn.* v. *Horne's Market,* 385 U. S. 23 (1966).[2] However we need not decide whether the same treatment should be given to denials of summary judgment under § 1253, for we conclude that the only interlocutory orders that we have power to review under that provision are orders granting or denying *preliminary* injunctions. Since in our view

---

[2] The Second Circuit originally took the view that denial of summary judgment, where an injunction had been prayed for, was an appealable order denying an injunction under § 1292 (a)(1), *Federal Glass Co.* v. *Loshin,* 217 F. 2d 936 (1954) (L. Hand, J.; Frank, J., concurring; Clark, J., dissenting). This was contrary to the majority view that such orders were not appealable, a view best represented by *Morgenstern Chemical Co.* v. *Schering Corp.,* 181 F. 2d 160 (C. A. 3d Cir. 1950). The Second Circuit, even before this Court's decision in *Switzerland Assn., supra,* had reversed its position. *Chappell & Co.* v. *Frankel,* 367 F. 2d 197 (1966) (en banc). See also 6 J. Moore, Federal Practice ¶ 56.21 [2], at 2791–2792 (2d ed. 1966).

In *Switzerland Assn., supra,* this Court left open the question whether an order denying summary judgment might be appealable as an order denying an injunction when the ground for the denial was other than the existence of a triable issue of fact.

the District Court here decided no question of preliminary injunctive relief, we cannot review its order.

Section 1253, along with the other provisions concerning three-judge district courts, 28 U. S. C. §§ 2281–2284 (a collectivity hereinafter referred to as the Three-Judge Court Act), derives from § 266 of the Judicial Code of 1911, 36 Stat. 1162, which in turn derived from § 17 of the Mann-Elkins Act of 1910, 36 Stat. 557. As originally enacted, the Three-Judge Court Act required that no *interlocutory* injunction restraining the operation of any state statute on constitutional grounds could be issued, except by a three-judge court, and provided that "[a]n appeal may be taken directly to the Supreme Court of the United States from the order granting or denying . . . an interlocutory injunction in such case." 36 Stat. 557. The Act grew out of the public furor over what was felt to be the abuse by federal district courts of their injunctive powers in cases involving state economic and social legislation. While broad and radical proposals were made to deal with the problem, including proposals to deprive the federal courts of all jurisdiction to enjoin state officers, Congress compromised on a provision that would deal with what was felt to be the worst abuse— the issuance of temporary restraining orders and preliminary injunctions against state statutes, either *ex parte* or merely upon affidavits, and subject to limited and ineffective appellate review. See *Phillips v. United States,* 312 U. S. 246, 250 (1941); Hutcheson, A Case for Three Judges, 47 Harv. L. Rev. 795, 803–810 (1934); Note, The Three-Judge District Court and Appellate Review, 49 Va. L. Rev. 538, 539–543 (1963).

Until 1925, the Act required a three-judge court only on application for an interlocutory (or, as we would say, preliminary) injunction. In that year, the Act was amended to carry the three-judge requirement forward to the issuance of a permanent injunction, 43 Stat. 938,

"in order to avoid the anomalous result of having a single judge review the decree of three judges at the final hearing." Note, 49 Va. L. Rev., *supra,* at 543. The provision governing appeal to this Court was correspondingly amended to allow direct appeal from "a final decree granting or denying a permanent injunction . . . ." 43 Stat. 938.

Thus, as of 1925, the provisions of the Three-Judge Court Act relating to appeal to this Court, set out in the Judicial Code, as amended, read as follows:

> "An appeal may be taken directly to the Supreme Court of the United States from the order granting or denying, after notice and hearing, an *interlocutory injunction* in such case. . . ." 36 Stat. 557.
>
> ". . . and a direct appeal to the Supreme Court may be taken from a *final decree* granting or denying a permanent injunction in such suit." 43 Stat. 938. (Emphasis added.)

As clearly as language can, this language confined this Court's review of three-judge court action to (1) final judgments granting or denying permanent injunctions, and (2) interlocutory orders granting or denying preliminary injunctions.

In 1948, the present Judicial Code was enacted, including § 1253 as it now stands. As the language now reads, the Court has appellate jurisdiction over any three-judge court order "granting or denying . . . an interlocutory or permanent injunction." On its face, this language is subject to the construction that interlocutory orders denying permanent as well as preliminary injunctions can be appealed to this Court. However, such a construction would involve 'an expansion of this Court's mandatory appellate jurisdiction over that granted by the clear language of the prior statute. The Reviser's Note to § 1253 indicates no intent to make such a sub-

stantive change; indeed, it refers to the section as merely a consolidation of prior provisions in Title 28, themselves derived from the statute as adopted and amended by Congress.[3]

This Court has more than once stated that its jurisdiction under the Three-Judge Court Act is to be narrowly construed since "any loose construction of the requirements of [the Act] would defeat the purposes of Congress . . . to keep within narrow confines our appellate docket." *Phillips* v. *United States, supra,* at 250. See *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368, 375 (1949); *Moore* v. *Fidelity & Deposit Co.,* 272 U. S. 317, 321 (1926). That canon of construction must be applied with redoubled vigor when the action sought to be reviewed here is an interlocutory order of a trial court. In the absence of clear and explicit authorization by Congress, piecemeal appellate review is not favored, *Switzerland Assn.* v. *Horne's Market, supra,* at 24, and this Court above all others must limit its review of interlocutory orders. *Hamilton Shoe Co.* v. *Wolf Brothers,* 240 U. S. 251, 258 (1916). In light of these factors, and the history of the statute as set out above, we cannot but conclude that our jurisdiction over interlocutory orders under § 1253 is confined to orders granting or denying a preliminary injunction.

As we read the record, this is not such an order. Appellants did, in their original complaint, pray for preliminary as well as permanent injunctive relief. And in moving for summary judgment, they requested "the relief demanded in the complaint." However, they took

---

[3] The 1948 revision of the Judicial Code did make one substantive change in the Three-Judge Court Act; it eliminated the requirement, imposed by the 1925 amendment, that a three-judge court should be required to hear an application for a permanent injunction only where an application for a preliminary injunction had originally been made. Reviser's Note, 28 U. S. C. § 2281.

no practical step toward obtaining such relief. They filed no separate application for a preliminary injunction. In none of their papers, in the District Court or in this Court, have they urged the appropriateness of temporary relief. The District Court in its opinion in no way adverted to the possibility of such relief being granted. Indeed, in the nature of the case, preliminary injunctive relief could never have been a practical possibility. Appellants are seeking the release of funds held in court in New York to beneficiaries outside the jurisdiction of the United States. Any injunction granting relief of this sort must necessarily have been final in its effect, and could hardly have been awarded in the absence of a final determination on the merits in appellants' favor. Since the order here in question is an interlocutory one, and is not an order granting or denying a preliminary injunction, we must dismiss the appeal from that order for want of jurisdiction.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

If summary judgment [1] had been granted to appellants there would be no question but that this Court would have jurisdiction under 28 U. S. C. § 1253 over an appeal from that judgment, as it would constitute an "order granting . . . an interlocutory or permanent injunction." Similarly, there seems little room for argument that the denial of summary judgment to appellants constitutes an order "denying . . . an interlocutory or permanent injunction," since such injunctive relief was requested

---

[1] The appellants' motion for summary judgment was as follows: "Plaintiffs move the court as follows:

"1. That it enter, pursuant to Rule 56 of the Federal Rules of Civil Procedure, a summary judgment in plaintiffs' favor for the relief demanded in the complaint on the ground that there is no genuine issue as to any material fact and that plaintiff is entitled

in appellants' complaint.[2] The majority opinion relies on *Switzerland Assn.* v. *Horne's Market*, 385 U. S. 23, as authority for dismissing this appeal for want of jurisdiction under 28 U. S. C. § 1253. In that case, however, the denial of summary judgment was based solely on the existence of a triable issue of fact;[3] the summary judg-

---

to a judgment as a matter of law; and, especially, in the light of *Zschernig* v. *Miller*, 36 L. W. 4120 (1/15/68), decided by the Supreme Court of the United States.

"The Affidavit of John R. Vintilla is attached hereto in support of this motion."

[2] The "relief demanded in the complaint" included:

"That [the District Court] issue *a permanent injunction* forever restraining and enjoining the defendants and each of them, their agents and employees, from denying plaintiffs, and others similarly situated the right to their distributive shares from decedents' estates, and to other funds to which they may be entitled; that the defendants, and each of them, their agents, and employees, be ordered and directed to take such action as shall be necessary to deliver the distributive shares and other funds which are due and owing to and being withheld from these plaintiffs and others similarly situated.

"That *pending the final hearing and determination of this complaint upon its merits, the Court issue a preliminary injunction,* restraining the defendants and each of them, their agents, and employees, from denying the plaintiffs, and others similarly situated, the right to their distributive shares and other funds to which they may be entitled." (Emphasis added.)

[3] *Switzerland Assn.* involved an action for unfair competition under the federal trademark laws, 60 Stat. 427, 15 U. S. C. § 1051 *et seq.* The sole claim was that defendant's actions in selling cheese labeled as "imported Swiss cheese" which had been imported into the United States from a country other than Switzerland were illegal under the trademark laws. The defense was that "imported Swiss cheese" had come to have an accepted meaning in the trade of Swiss cheese that had been imported from any country. The District Court found that the meaning in the trade of "imported Swiss cheese" was an issue of fact as to which there was a genuine dispute, and therefore denied the plaintiffs' motion for summary judgment.

The request for injunctive relief therefore had to await a jury trial on the facts.

ment did not concern in any way the merits of the case. This case involves more. Appellants claimed that § 2218 of the New York Surrogate's Court Procedure Act was unconstitutional on its face. The denial of summary judgment constituted a rejection of this claim on the merits, as well as a denial of injunctive relief based on that claim. On this basis, I would find jurisdiction under 28 U. S. C. § 1253 to decide this appeal on the merits.