Argued and submitted March 9, affirmed May 23, 1984

The ROBERT RANDALL CO. et al,
*Appellants,*

*v.*

CITY OF BEAVERTON,
*Respondent.*

(82-1880C; CA A28386)

682 P2d 818

Kevin L. Hanway, Lake Oswego, argued the cause and filed the brief for appellants.

Michael G. Dowsett, City Attorney, Beaverton, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is a declaratory judgment proceeding in which plaintiffs seek to establish that defendant City of Beaverton's water rate structure, as set out in Ordinance No. 3267, is arbitrary and unreasonable and, therefore, unconstitutional under the Fourteenth Amendment to the United States Constitution.[1] The trial court held in favor of the city, and plaintiffs appeal. We affirm.

Plaintiffs are owners of, or property managers for, apartments and apartment complexes located in the City of Beaverton. The city supplies plaintiffs' businesses with domestic water. In 1979, the city's voters authorized a 14.8 million dollar bond issue to build a water system for the city designed to meet the growth needs of the community and to remove the city from dependence on the City of Portland for treated water. As part of the bond authorization process, the city council pledged water user revenues to repay the bonds but deferred any rate increase for three years.

In 1981, after completion of construction and switch-over to the new water system, a rate study committee was formed and a consulting firm hired to do a water rate study, which was completed in June, 1982. After three public meetings to solicit comments and a work session, the city council approved Ordinance No. 3267, which established the new rates and charges for water service.

The rate structure in Ordinance No. 3267 contains four basic components:

(1) *Customer Charge* of a flat fee of $2.00 per month for each billing to cover the cost of preparing and processing customer bills, regardless of the type of dwelling billed.

(2) *Variable Rate Charge* of $0.64 for each 100 cubic feet of water actually consumed for all users.

(3) *Base Capacity Charge* designed to generate sufficient revenue to meet fixed capital costs and costs of retirement of the bond indebtedness.

---

[1] Plaintiffs also sought to obtain a preliminary injunction against the enforcement of the ordinance. Because we affirm the order denying declaratory relief, we need not address the issue of the preliminary injunction.

(4) *Excess Capacity Charge* for residential users added to the variable rate charge for above normal usage.

Plaintiffs challenge only the base capacity charge[2] component of the water rate structure, claiming that it discriminates against users in multi-family units within a single structure in an arbitrary and unreasonable manner.

The base capacity charge generates the revenue needed to repay the 1979 bonds. The ordinance declares that the base capacity charge to each premises within and outside the city will be a specified amount per month based on water meter size, but that, where a single meter serves more than one dwelling unit, each dwelling unit shall be charged at the rate of the monthly charge for a 3/4-inch meter, regardless of the actual size of the meter.

---

[2] Ordinance No. 3267 provides, in pertinent part:

"THE CITY OF BEAVERTON ORDAINS AS FOLLOWS:

"* * * * *

"Section 26. *Water Rates and Charges for Premises Within and Outside the City.* The rates and charges for water services supplied to premises both within and outside the corporate boundaries of the City of Beaverton shall be as follows:

"* * * * *

"(2) *Base Capacity Charge.* In addition to the customer charge, above, there is a base capacity charge per month, based on water meter size in the following amounts:

| "Meter Size | Monthly Charge |
| --- | --- |
| "Five-eighths (5/8") and three-quarter inch (3/4") | $ 6.00 |
| "one inch (1") | 10.75 |
| "one and one-half inch (1 1/2") | 24.20 |
| "two inch (2") | 43.00 |
| "three inch (3") | 96.75 |
| "four inch (4") | 172.00 |

"In the event a single meter serves more than one dwelling unit, such as a single meter serving more than one duplex or multifamily unit within a single structure or on a single lot, there shall be a separate base capacity charge for each dwelling unit. The base capacity charge to each dwelling unit served by the single meter shall be at the rate of the monthly charge for a three-quarter inch (3/4") meter, regardless of the actual size of the meter. For purposes of section 26 of this ordinance, residential means those water consumers on premises containing a single family, duplex or multifamily dwelling unit."

The city explains that the base capacity charge was designed to treat all residential users equally as to the fixed costs for availability of the system. The 3/4-inch meter standard was chosen for multi-family units, because all single family residences are served by either a 5/8-inch or 3/4-inch meter and would pay a $6.00 base capacity charge, as would each multi-family unit in a single structure under Ordinance No. 3267. The council adopted the "equivalent dwelling unit" standard to make the base capacity charge the same for each unit in the residential classification, whether a single family structure or multi-family structure. The charge is not tied to the amount of water actually used but to the number of family units actually served, for the purpose of allocating fixed costs of building the water system equally among the residential units on the system.

In *Or. State Homebuilders v. City of Tigard,* 43 Or App 791, 604 P2d 886 (1979), *rev den* 288 Or 527 (1980), we upheld an ordinance that imposed a systems development charge to implement installation, construction and extension of street facilities and traffic control devices on new construction. We explained our limited role in reviewing the method employed by the city to produce revenues through a systems development charge:

"Our review of the ordinance is limited to the minimal scrutiny test applicable to legislation in the areas of economics and social welfare. *See Dandridge v. Williams,* 397 US 471, 90 S Ct 671, 24 L Ed 2d 663 (1970). That test requires only that there be some rational basis for the classification made by the statute, and '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 US 420, 426, 81 S Ct 1101, 81 S Ct 1153, 81 S Ct 1218, 6 L Ed 2d 393 (1961). As noted in *New Orleans v. Dukes,* 427 US 297, 303-4, 96 S Ct 2513, 49 L Ed 2d 511 (1976):

"'* * * the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines * * * in the local economic sphere it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.' " 43 Or App at 797-98.

Plaintiffs concede that each family unit within a single structure housing multiple families pays the same base

capacity charge as a single family unit. The thrust of plaintiffs' claim is that the city's decision to allocate fixed costs equally among residential units is improper, because multi-family units consume less water than single family units. Plaintiffs rely heavily on *Kliks et al v. Dalles City et al,* 216 Or 160, 335 P2d 366 (1959), in support of their objection. In *Kliks,* the city utilized a minimum meter charge rate schedule that entitled users to a 7,500 minimum gallonage and a flat rate for additional water, except for apartment houses. Apartment houses had to use 7,500 gallons times the number of apartment units before the flat rate was charged. Under that rate structure, the use of the same amount of water would cost apartment users significantly more than hotel or motel users. The court stated that the rate differential itself had no effect on the constitutionality of the rate structure but held that the rate structure was arbitrary and unreasonable, because the court was unable to find any reason for imposing a higher cost for water actually consumed in apartments than in hotels, motel and similar structures.

Plaintiffs correctly point out that minimum scrutiny does not mean no scrutiny and that any classification of water users must be reasonable. *Kliks et al v. Dalles City et al, supra.* However, *Kliks* does not support the result plaintiffs ask us to reach. There, the separate classification of apartments resulted in a higher cost for water used by apartment dwellers with no rational basis offered for the higher charge. In the present case, family units in multi-family structures are not asked to bear a larger burden of the capital outlay, construction and system capacity related costs that comprise the base capacity charge. Family units in multi-family structures bear an equal burden. In order to accomplish that objective, the city chose not to assess the base capacity charge on quantity of water used but on the number of dwelling units availing themselves of the system. Plaintiffs concede that the ordinance accomplishes equality among residential users for fixed costs. Treating residential users equally with respect to fixed charges is not without a rational basis.

It is important to recognize that, in this case, unlike *Kliks,* no element of the charge under scrutiny involves variable operation and maintenance costs. Those costs are recouped by the variable rate component and, to some degree, by the excess capacity charge. The amount charged each

customer under the variable rate component of the water rate structure is determined by the amount of water a customer uses during a particular month. Every user pays the same variable usage rate of $0.64 per 100 cubic feet of water used. The total amount of the variable rate charge is tied only to consumption, and the costs and expenses that go into setting the variable rate are those influenced by the amount of water used.

By spreading the base capacity charge equally among the dwelling units that use the water system, the city has recognized that that component of the water rate structure will not vary with consumption, because the base capacity charge contains only *fixed* costs incurred in constructing the water system. The decision to charge each dwelling unit equally for access to a system that would not exist but for the capital raised by the bond issue is not without a rational basis.

Affirmed.