OPINION OF THE COURT
William Leibovitz, J.
In this proceeding brought under CPLR article 78 and for a declaratory judgment, petitioners claim that New York City should be enjoined from naming a City street corner in a manner that would politically offend and embarrass them, injure their property rights, and unconstitutionally interfere with the exclusive Federal power of the United States to conduct its foreign affairs. The government of Nigeria has requested permission to intervene as a petitioner.
Initially, the application to intervene is granted under CPLR 1013, in the court’s discretion, since among the various petitioners Nigeria is the party principally interested in this matter. Other petitioners herein are the Congress of Nigerians Abroad, Inc., a New York not-for-profit corporation representing Nigerians living outside of that country, and Silva Opusunju, an officer of that organization.
Another application to intervene has been made jointly by two individuals, Taiwo Ogunade and Tunde Harrison, who assert they are Nigerian citizens residing in New York. Apart from their opposition to the petition, they allege no substantial basis on which to intervene, and any possible interest they may claim is already adequately represented by the respondents. Moreover, the proposed interveners have not filed proposed pleadings as required under CPLR 1014. Their application to intervene is denied.
BACKGROUND
In May 1997, Community Board Six of Manhattan recommended to the New York City Council that the name “Kudirat *543 Abiola Corner” be added to the corner of Second Avenue and East 44th Street in Manhattan, in memory of the slain wife of a candidate in the 1993 Nigerian presidential election whom Nigeria later jailed as a dissident, where he remains. In early October 1997, the Community Board, after various protests from the Nigerian government and individual Nigerians, withdrew its position on the naming of the corner and requested the City Council to make its own decision.
On October 29, 1997, after a hearing, the City Council enacted Local Laws, 1997, No. 93 of the City of New York, which added the name “Kudirat Abiola Corner” to the northeast corner of Second Avenue and East 44th Street in Manhattan. Across from that corner, at 828 Second Avenue, the Nigerian government owns a building in which the Nigerian Mission to the United Nations and Nigerian Consulate are located, in addition to the offices of petitioner the Congress of Nigerians Abroad, Inc. In November 1997, the Nigerian Embassy in Washington, D.C. filed a formal note of protest of Local Law No. 93 with the State Department of the United States, calling the law a political effort to embarrass the Nigerian government.
Because the Mayor of New York did not sign or veto Local Law No. 93 within 30 days of passage, the law was to become effective. However, another Judge of this court issued a temporary restraining order to the original petitioners herein, which was extended, staying Local Law No. 93 pending this determination.
DISCUSSION
Petitioners assert that New York City has intruded on United States foreign policy, which recognizes the government of Nigeria, by naming a street corner adjoining its building after Kudirat Abiola, the wife of Mashood K. O. Abiola, a jailed Nigerian rebel. It is argued that Nigeria “charged Kudirat Abiola with subversion and treason, though she was killed before she was tried” (petitioners’ mem, at 9). As such, petitioners contend that Local Law No. 93 is a “targeted political statement” contrary to the position of the United States Government, which has exclusive power over foreign affairs, and is therefore unconstitutional (petitioners’ mem, at 2, 9).
Article VI of the US Constitution prohibits a State or municipality from enacting any law in conflict with the laws of the United States, which stand as “the supreme Law of the Land”. Under that mandate, the Federal Government has exclusive power to conduct foreign affairs.
*544 An example of prohibited State intrusion into Federal policy involving foreign affairs occurred in Hines v Davidowitz (312 US 52 [1941]). A Pennsylvania statute regulating alien registration imposed various registration requirements for aliens residing in that State, which in certain respects differed from and exceeded the Federal alien registration statute enacted by the Congress. On review by the Supreme Court, the State law was ruled unconstitutional under article VI because it demonstrably competed and conflicted with Federal law that preempted the Pennsylvania regulations.
However, as evidenced by subsequent cases before the Court, Hines (supra) was not intended to become an absolute bar against all possible State and local legislation affecting the field of foreign affairs, however indirectly. In Clark v Allen (331 US 503 [1947]), a California statute made the right of nonresident aliens to acquire personal property by inheritance from California residents dependent on the reciprocal rights of American citizens to inherit such property in the alien’s country of citizenship or residence. The Supreme Court determined that although the California inheritance law necessarily entered the area of foreign law interpretation, on its face there was no constitutional interference with an overriding Federal policy or contrary Federal law specifically governing succession to personal property that would require the State law to give way.
Critical to the Court’s analysis in Clark v Allen is the observation that: “What California has done will have some incidental or indirect effect in foreign countries. But that is true of many state laws which none would claim cross the forbidden line.” (331 US, supra, at 517.)
Therefore, in determining whether a State or local law has crossed “the forbidden line”, it is necessary that such law be shown clearly to have more than an “incidental or indirect effect” on foreign affairs before it can be held unconstitutional. As viewed in Hines (supra), the conflict with foreign policy of the Federal Government must be demonstrably direct and specific before Federal preemption occurs.
Illustrative of this distinction was the notable decision in Zschernig v Miller (389 US 429 [1968]), finding unconstitutional, as applied, an Oregon law which provided that an alien could inherit personal property in Oregon only if there was reciprocity and no confiscation of the inherited property in the alien’s country. A California statute also requiring reciprocity had been facially upheld in Clark v Allen (supra). However, in *545 applying the Oregon law, Oregon’s courts had. become enmeshed in minutely analyzing the credibility of foreign diplomatic statements, the actual administration of foreign law, and the affairs and motives of foreign countries in relation to confiscation policies.
The Court held in Zschernig (supra, at 434) that Oregon had applied its law with more than only an “ ‘incidental or indirect effect in foreign countries,’ ” which had been sanctioned in Clark v Allen (supra). Oregon’s actions demonstrably implicated international relations entrusted by the US Constitution only to the Federal Government.
Since Zschernig (supra), the constitutional validity of State and local enactments or actions relating to foreign countries has depended similarly on whether direct interference with foreign relations can be shown in their application. In Matter of Leikind (22 NY2d 346, 351-352 [1968]), former section 269-a of the Surrogate’s Court Act was held constitutional under Zschernig, although it allowed the State Court to determine whether the Soviet Union, by statute or otherwise, prevented its residents from actually sharing in the estates of New York decedents, since the Court did no more than “ ‘routinely read’ ” foreign laws and there was “no palpable interference” with foreign relations in their application. (See also, Goldstein v Cox, 299 F Supp 1389 [SD NY 1968].)
In Shames v State (323 F Supp 1321, 1332 [D Neb 1971]), it was held that a statute uniformly denying all nonresident aliens the right to inherit certain Nebraska lands was not unconstitutional either facially or as applied under Zschernig (supra).
However, in Matter of New York Times Co. v City of N. Y. Commn. on Human Rights (41 NY2d 345 [1977]), where the Commission conducted a detailed fact-finding hearing and made rulings incorporating its views of South African employment hiring practices so as to enforce New York City’s local antidiscrimination laws by enjoining the Times from running advertisements for employment in South Africa, such local enforcement rulings were held unconstitutionally invasive of the exclusive powers of the Federal Government to conduct foreign policy.
But in Hoylake Invs. v Washburn (723 F Supp 42 [ND Ill 1989]), an Illinois statute was ruled constitutional which allowed a State administrator to withhold approval of a takeover of an Illinois corporation by an English company, since the impact on international relations was only indirect.
*546 Likewise, in Trojan Technologies v Commonwealth of Pa. (916 F2d 903 [3d Cir 1990]), it was held constitutional for a Pennsylvania statute to require that steel used in public works in that State had to be produced in the United States. Although the law incidentally affected foreign countries and international relations, it did not squarely involve the State with “foreign regimes” (at 913), as did the application of Oregon’s law in Zschernig (supra).
ANALYSIS
A. Declaratory Judgment
On the record presented, I find that petitioners have not demonstrated that New York City ventured unconstitutionally into the Federal Government’s foreign affairs by enacting Local Law No. 93, which named the corner of Second Avenue and East 44th Street across from petitioners’ building, “Kudirat Abiola Corner”. Petitioners have made no reasonable showing that the naming of the street corner will have more than “some incidental or indirect effect”, if any, on foreign affairs, that would intrude unconstitutionally on the exclusive Federal powers of the United States (Clark v Allen, supra, at 517; Zschernig v Miller, supra, at 434-435). An “exceedingly strong” presumption of constitutionality applies to both State and municipal enactments, and unconstitutionality must be demonstrated beyond a reasonable doubt (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11 [1976]; Matter of Malpica-Orsini, 36 NY2d 568, 570 [1975]; Nettleton Co. v Diamond, 27 NY2d 182, 193 [1970]).
Petitioners’ factual claims are unsupported and at best speculative. The naming of the street corner cannot be justifiably construed as New York City’s political approval of a “jailed rebel of the recognized Nigerian government * * * contrary to the position taken by the United States government,” as petitioners assert. The name “Kudirat Abiola Corner” honors and commemorates a slain Nigerian woman whose husband, a dissident, is jailed in Nigeria. This cannot reasonably be deemed to be New York City “establishing] its own foreign policy,” as petitioners argue.
Moreover, petitioners have presented no facts showing that Local Law No. 93 conflicts with any specific policy of the Federal Government regarding Nigeria. Petitioners allege that the Nigerian Embassy filed a formal note of protest of the street corner naming with the State Department in Washington, D.C., and requested that the State Department prevail on the Mayor *547 of New York City to disapprove the naming. However, at oral argument of this case before me, petitioners conceded that the State Department has claimed no interference by New York City with foreign policy, and has elected not to participate in this matter.
Likewise, there is no factual support for petitioners’ claim that the street corner naming will have a “direct impact” on international relations, as envisioned in Zschernig v Miller (supra, at 441). Petitioners warn that Local Law No. 93 could cause the Nigerian government to retaliate by adversely renaming the street next to the United States Embassy in Nigeria which, they contend, unconstitutionally creates the “dangers” of international repercussions noted in Zschernig. But what dangerous adverse name-calling could occur? Might Nigeria offend New York City by naming the street outside the United States Embassy “Boston Red Sox Boulevard” or “Los Angeles Symphony Orchestra Drive”? Local Law No. 93 has not been demonstrated to have a “direct impact upon foreign relations” (at 441), but instead falls within “the category of a diplomatic bagatelle”, referred to in Zschernig (at 434-435).
In sum, Local Law No. 93 does not demonstrably conflict or compete with an existing Federal law requiring preemption, as in Hines v Davidowitz (supra). There is no interference with an overriding Federal policy requiring local law to give way, as noted in Clark v Allen (supra). New York City has not minutely inquired into the workings of a foreign government or questioned its diplomatic credibility, as seen in Zschernig v Miller (supra) or in Matter of New York Times Co. v City of N. Y. Commn. on Human Rights (supra). Local Law No. 93 creates no constitutional violation.
B. CPLR Article 78 Proceeding
Petitioners also claim, pursuant to CPLR article 78, that Local Law No. 93 is irrational, arbitrary and capricious, essentially for the same reasons that they seek a declaration of unconstitutionality. Each petitioner alleges injury by virtue of the lessening of value of the building it owns or occupies at 828 Second Avenue, in Manhattan, resulting from the naming of the street corner at that location. They also claim injury to themselves from the possibility of international discord resulting from the street naming, which they maintain “will reverberate throughout the world.” However, none of these claims are more than speculative, and in the final analysis do not reasonably flow from the change of name outside of their building.
*548 Relief under CPLR article 78 requires petitioners to demonstrate a zone of interest and injury in fact entitling them to standing as aggrieved parties (Matter of Dairylea Coop. v Walkley, 38 NY2d 6 [1975]; Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Council of City of N. Y., 214 AD2d 335 [1st Dept], lv denied 87 NY2d 802 [1995]). Petitioners have each failed to establish injury, and standing under CPLR article 78 is therefore lacking.
Nevertheless, the record of this matter for the reasons previously stated clearly shows that respondents acted rationally, and not arbitrarily or capriciously, and did not abuse their discretion, in relation to Local Law No. 93 (Matter of Pell v Board of Educ., 34 NY2d 222 [1974]; CPLR 7803 [3]). While petitioners allege that this particular street naming is an “insult” to the government of Nigeria, and is therefore disruptive, arbitrary and injurious, petitioners do not disagree with the principle that New York City has the right to name its own streets. It is not the proper function of the court to question whether the street corner naming was sufficiently appropriate or discreet. Having found a reasonable and lawful basis for the enactment of Local Law No. 93, the court’s function is exhausted (Ostrer v Schenck, 41 NY2d 782, 786 [1977]).
CONCLUSION
In contesting the legality of the street corner naming, petitioners have stated that “New York City does not speak for the United States.”
Clearly, it does not. New York City speaks in its own voice, within its own environs. In quiet towns and villages across the United States, streets are not likely to be named after the slain relative of another nation’s political dissident, and more probably bear benign names such as “Spruce”, “Oak” and “Maple”, after the shade trees that line them. But in New York City, there is less an atmosphere of tranquility than a swirl of global soundings which, as here, can implicate even the naming of a street corner.
It is largely for those reasons that Local Law No. 93 does not unconstitutionally intrude on foreign lands, nor is it irrational or arbitrary. Local Law No. 93 is indigenous to New York City, which speaks for itself, and should not serve to impair either foreign relations or the sensibilities of its residents, local or foreign.
Accordingly, petitioners’ motion for a declaratory judgment to declare Local Law No. 93 unconstitutional, and to enjoin its *549 implementation, is denied, and Local Law No. 93 is declared constitutional.
The petition pursuant to CPLR article 78 is denied and dismissed.