716 F.2d 126
 The CLARKSON COMPANY LIMITED, as Trustee in Bankruptcy,
etc., Plaintiff,
v.
John M. SHAHEEN, Roy M. Furmark, Albin W. Smith, Peter L.
Caras, Paul W. Rishell, Shaheen Natural Resources Company,
Inc., Newfoundland Refining Company, Ltd., U.S.A., and
Founders Corporation, Defendants.
The CLARKSON COMPANY LIMITED, as Trustee in Bankruptcy,
etc., Petitioner-Appellee,
v.
SHAHEEN NATURAL RESOURCES COMPANY, INC., John M. Shaheen,
MacMillan Ring-Free Oil Co., Inc., and Ian W.
Outerbridge, Respondents-Appellants,
and
Global Forwarding, Inc., Skidmore & Mason, Inc., Bona Vista
Food Services, Ltd. and United Airlines, Inc.,
Additional Respondents-Appellants.
 Nos. 488, 1325, Dockets 82-7532, 82-7604.
 United States Court of Appeals,
Second Circuit.
 Argued April 14, 1983.
Decided Aug. 15, 1983.
 
 Edna R. Sussman, New York City (White & Case, New York City, Jeffrey Barist, Allan L. Gropper, New York City, of counsel), for petitioner-appellee.
 Peter R. Porcino, New York City (Cowan, Liebowitz & Latman, P.C., New York City, Lewis R. Cowan, New York City, of counsel), for additional respondents-appellants.
 Before FEINBERG, Chief Judge, and LUMBARD and MESKILL, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 This appeal arises out of enforcement proceedings brought by the Clarkson Company Ltd., to collect on its judgment against John Shaheen, Shaheen Natural Resources (SNR) and others. On June 4, 1982, Judge Owen of the Southern District of New York granted Clarkson's claim to stock owned by SNR priority over the competing claims of four other judgment creditors, Global Forwarding, Inc., Skidmore & Mason, Inc., Bona Vista Food Services, Ltd., and United Airlines (the state judgment creditors). The state judgment creditors appeal, challenging Clarkson's priority on the ground that it never perfected a levy against the securities in question. We affirm. Several months before the state judgment creditors attempted to levy on the stock, the district court took custody of the certificates for the benefit of Clarkson. We hold that no subsequent levy against SNR's interests in the stock could give the state judgment creditors priority over Clarkson's claim.
 
 I.
 
 2
 The Clarkson Company Ltd. filed the underlying lawsuit in this matter in March of 1976 as trustee in the bankruptcy of the Newfoundland Refining Company, Ltd. (NRC), a company controlled by John Shaheen. Clarkson sought to recover money that NRC had advanced or loaned to Shaheen, Shaheen Natural Resources, Inc., which Shaheen controlled, and others. On July 22, 1980, the district court entered judgment for Clarkson against the defendants for approximately $50 million; the judgment was affirmed in relevant part on appeal to this court. Clarkson v. Shaheen, 660 F.2d 506 (2d Cir.1981), cert. denied, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). Clarkson immediately began its attempt to collect on the debt.
 
 
 3
 On July 1, 1980 after the jury had returned a verdict for Clarkson, the district court restrained the defendants from transferring assets. Nevertheless, on July 31, 1980, only nine days after the district court entered judgment on the jury's verdict, SNR transferred 185,000 shares of MacMillan Ring-Free Oil Co., Inc., to Ian Outerbridge, a Canadian attorney. The shares in MacMillan, a Delaware corporation that was controlled by Shaheen and had its principal place of business in New York, represented the bulk of SNR's principal asset. Thus, unbeknownst to Clarkson, when it levied against SNR in September, 1980 the MacMillan stock certificates were no longer in SNR's actual possession. When SNR failed to turn over the stock, Clarkson attempted to perfect its levy by commencing a "turn-over" proceeding in the district court to compel SNR's compliance with the execution levy. New York Civ.Prac.Law Secs. 5225 & 5232(a) (McKinney 1978).
 
 
 4
 Clarkson did not learn of the transfer to Outerbridge until December 5, 1980. It moved immediately for relief, and in a hearing that day the court ordered MacMillan and its transfer agents not to transfer or assist in the transfer of the stock then in Outerbridge's possession. Three days later, after further consideration and a second hearing, the court ordered Outerbridge to retain the stock and to preserve any dividends or proceeds.
 
 
 5
 The following month, Clarkson began a second Sec. 5225 turn-over proceeding to recover the MacMillan stock, this time naming Outerbridge as an additional respondent. Outerbridge voluntarily submitted himself to the jurisdiction of the court, but contested the turn-over proceeding on the ground that he had received the stocks in good faith for services rendered. The district court directed Outerbridge to bring the certificates within the jurisdiction of the Southern District. And on March 13, 1981, as the district court later described it, "the Court ordered the Spengler Carlson firm to take custody of those shares from its client Outerbridge and to hold them as 'trustee' for the Court, which the firm did. From that moment until the present, the shares have been in the custody of this Court." 76 Civ. 1373, slip op. at 7 (January 26, 1982) (emphasis in original).
 
 
 6
 On October 27, 1981, the district court found that the MacMillan stock transfer was a fraudulent conveyance in violation of the court's July 1, 1980 restraining order. The court specifically found that neither Shaheen nor Outerbridge acted in good faith and that the transfer was not for fair consideration. The court ordered Spengler Carlson to turn the stock over to Clarkson.[1]
 
 
 7
 Spengler Carlson refused to do so on the ground that it was subject to contradictory commands. Several other judgment creditors had begun to take an interest in the stock. They sought to enforce outstanding judgments totaling about $100,000, obtained against SNR in New York courts[2] between 1976 and 1978. In July and September of 1981, several months after Spengler Carlson had taken the stock as trustee for the district court, the state judgment creditors had levied against the stock in the firm's possession and had commenced a Sec. 5225 turn-over proceeding against the firm in New York state court. Spengler Carlson argued that the state judgment creditors' levies made it impossible to comply with the district court's order to turn the stock over to Clarkson.
 
 
 8
 On November 2, 1981, on Clarkson's motion, the district court enjoined the state court turn-over proceedings and ordered Spengler Carlson to turn the stock over either to Clarkson or to the district court. Spengler Carlson then applied to this court for a stay of the order. However, on November 3, we denied the application, and the firm complied with our order to turn the stock over immediately to the district court.[3]
 
 
 9
 On February 3, 1982, pursuant to a January 26, 1982 decision of Judge Owen, Clarkson began proceedings under Civ.Prac.Law Secs. 5225 and 5239 (McKinney 1978) to determine its priority over the state judgment creditors. In an opinion filed on June 4, 1982, the district court held that Clarkson's rights in the MacMillan shares were prior and superior to those of the state judgment creditors. This appeal followed.
 
 II.
 
 10
 The district court found that Clarkson's April 2, 1981 levy against Spengler Carlson and its earlier January 28, 1981 turn-over proceeding against Outerbridge satisfied New York's statutory requirement for perfecting a levy. The state judgment creditors disagree; they argue that a levy must precede the commencement of a turn-over proceeding and that both actions must be taken against the same party. Since Clarkson failed to comply with either requirement, the argument goes, Clarkson never perfected its levy. The state judgment creditors then argue that they are entitled to priority over Clarkson because they perfected their interest in the stock by levying and proceeding against Spengler Carlson in September 1981. Thus they would claim the fruits of Clarkson's labor in tracking Shaheen's assets.
 
 
 11
 We find it unnecessary to address the argument concerning the proper order of the levy and the turn-over proceedings. We affirm on the ground that once the shares came into the custody of the court for Clarkson's benefit, no subsequent activity could give third parties a superior claim.
 
 
 12
 The state judgment creditors argue at the outset that the district court's directions to Spengler Carlson constituted a mere restraining order, enjoining the firm from transferring the stock. As noted above, however, the district court specifically found that Spengler Carlson had taken the stock as trustee for the court. Indeed, the court made its view of the order clear on several occasions, stating, for instance, during a November 1981 colloquy with the parties,
 
 
 13
 At the time that Outerbridge was directed to put the shares in this jurisdiction, I wanted them to be in the possession of the court.... I in effect said to Mr. Sear [of Spengler Carlson] that he was to take them and hold them for me.... Mr. Sear and [the firm were] to hold those in lieu of my having them personally in my possession ... based upon the confidence that I reposed in him personally.
 
 
 14
 The court found to the same effect when it enjoined the state court proceedings concerning the stock certificates which were then in the "custody" of the court. 76 Civ. 1373, slip op. at 7 (quoted supra ). See also 525 F.Supp. 625, slip op. at 629 (S.D.N.Y.1981).
 
 
 15
 Spengler Carlson took the shares in custodia legis as an officer of the court. Any attempt to levy on Spengler Carlson after this time and to restrain the firm's compliance with the district court's orders would be an attempt "to interfere with the officer's possession [and] would amount to an invasion of the jurisdiction of the court itself." 1 A.L.R.3d Funds Deposited in Court as Subject of Garnishment Sec. 2, at 939 (1965). Plaintiff cites no authority for such an invasion here.
 
 
 16
 We note that New York apparently does not follow the general rule that property in custodia legis is wholly immune from attachment. Compare Wehle v. Conner, 83 N.Y. 231 (1880) (sustaining the right of a judgment debtor to attach funds held by sheriff for judgment creditor where the debtor claimed that obligations of the creditor offset the judgment that the debtor owed the creditor) with 6 Am.Jur.2d Attachment and Garnishment Sec. 196, at 702 (1963) ("in the absence of express statutory authority ..., the general rule is that property or funds in custodia legis are not subject to either attachment or garnishment.") Nevertheless, the right under New York law to attach property in the custody of the court is limited. The moving party may attach only such interests as the debtor retained in the property after it passed into the court's custody. Thus, in Dunlop v. Patterson Fire Insurance Co., the New York Court of Appeals allowed the defendant's creditor to attach the defendant's funds, which had been placed in court to secure the plaintiff's judgment; however, the court held that the defendant retained only a reversionary interest in the fund, contingent upon his either prevailing at trial or suffering a judgment against him for less than the amount of the fund. 74 N.Y. 145, 148-49 (1878). Only the debtor's contingent, reversionary interest was subject to attachment. Id. at 148-49. Accord, Saper v. West, 263 F.2d 422, 427 (2d Cir.) (creditor could not attach fund held in custody of court since debtor retained only a reversionary interest in the fund contingent upon the "highly remote possibility that the trial court's judgment would be reversed on appeal"), cert. denied, 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959); see also Mid-Jersey National Bank v. Fidelity Mortgage Investors, 518 F.2d 640, 644 (3d Cir.1975) (citing Saper v. West with approval and holding that only the defendant's "contingent reversionary interest" in funds held in trust by court for benefit of plaintiff could be subject to jurisdiction of another court during the pendency of the 'trust'). The New York Court of Appeals followed Dunlop in Matter of Leikind, holding that a creditor could attach a defendant's interest in funds held in custodia legis for the purposes of obtaining in rem jurisdiction. 22 N.Y.2d 346, 353, 292 N.Y.S.2d 681, 239 N.E.2d 550 (1968). The court also held that the creditor could attach the fund to satisfy his judgment to an extent not inconsistent with the purpose for which the fund was created. Id.
 
 
 17
 Here, the court took custody of the stock for the benefit of Clarkson, creating a trust for the purpose of securing Clarkson's claim to enforcement of its judgment. At that point, the only interest SNR retained in the stock was the right to receive any amount not necessary to satisfy Clarkson's claim. Since the MacMillan shares are allegedly worth less than $1 million, and since Clarkson has allegedly collected only a small fraction of its $50 million judgment, SNR's contingent, reversionary interest appears to have terminated. In any event, the state judgment creditor's attachment of SNR's reversionary interest did not give them priority over Clarkson's claim to enforcement of its judgment against SNR.
 
 
 18
 Affirmed.
 
 
 
 [1]
 Appeal from the orders of October 27, 1981, November 2, 1981 and January 26, 1982, which set aside the transfer to Outerbridge, was dismissed upon settlement by the parties
 
 
 [2]
 Bona Vista Food Services, Ltd., recovered its judgment against SNR in the Federal District Court for the Southern District of New York; nevertheless, the four judgment creditors, including Bona Vista, who oppose Clarkson's claim refer to themselves as the "state judgment creditors."
 
 
 [3]
 Since the office of the clerk for the Southern District of New York was closed on November 3, we appointed the deputy clerk of the Second Circuit to receive the securities as surrogate for the district court, with instructions to deliver them to the custody of the clerk of the district court the following morning