OPINION
EDWARD WEINFELD, District Judge.
At issue are four motions in two consolidated interpleader actions: (1) Plaintiffs, Avant Petroleum, Inc. and Mitsui & Co., Inc. (“Avant”), move for an order requiring defendants to interplead in these consolidated actions, discharging plaintiffs from further liability with respect to the monies deposited, making permanent the injunctive order of the Court, and awarding plaintiffs their reasonable costs and attorneys’ fees; (2) plaintiffs also move for an order pursuant to Rule 12(c) or, alternatively Rule 56, of the Federal Rules of Civil Procedure, for judgment against Crysen Trading & Marketing, Inc. (“Crysen”) on Crysen’s counterclaim against plaintiffs for the interest which may have accrued on the funds involved in the original interpleader action, as hereafter more specifically referred to; (3) defendant BP North America Petroleum Inc. (“BP”) moves for summary judgment declaring its security interest in the inter-pleader fund superior to that of Banque Paribas (“Paribas”) and transferring the interpleader fund to the Registry of the District Court of Harris County for the 33rd Judicial District of Texas; and (4) Paribas cross-moves for summary judgment determining that it has the superior interest in the consolidated interpleader *544 fund and directing the immediate release of the fund to it.
Background
On July 81, 1981 Crysen executed a general security agreement in favor of Paribas. That agreement gave Paribas a security interest in all of Crysen’s property, including all accounts receivable. Paribas then perfected its security interest by filing a financing statement in New York on August 10, 1981, in Texas on August 11,1981, and in California on September 4, 1981.
On April 7, 1986, BP commenced suit for breach of contract against Crysen in Texas, and the Texas Court issued a writ of garnishment which provided that:
IT IS FURTHER ORDERED that the maximum value of property or indebtedness that may be garnished is $5,560,-000.00. Further, the writ shall command the Garnishee NOT to pay Crysen any debt or to deliver any effects to it, pending further order of this Court.
This writ was served on Avant in this District on April 23, 1986. On May 16, 1986, plaintiffs brought on the First Interpleader Action by Order to Show Cause, asserting the threat of competing claims by Paribas, BP, and Crysen, and the risk of inconsistent and multiple findings of liability. The Court ordered that the funds, $13,385,-925.76, be deposited into the Registry of the Court by May 19, 1986. Another payment of $2,763,816 became due to Crysen under a separate transaction on May 20, 1986, and Avant commenced the Second Interpleader Action on that day. Avant was then directed to transfer the $2,763,-816 into the Court’s registry.
After a hearing before the Court on May 27, 1986, the two interpleader actions, and the funds involved in those actions, were consolidated. Additionally, the defendants were enjoined from proceeding with any other actions affecting the interpleaded funds. On July 7, 1986, the parties stipulated that all but $6,300,000 of the consolidated interpleader fund be released to Paribas.
Discharge, Injunction and Attorneys’ Fees
Plaintiffs’ motion for a discharge, injunctive relief, and reasonable costs and attorneys’ fees is granted without opposition. Plaintiffs are awarded costs and fees in the amount of $30,000.00.
Crysen’s Counterclaim for Interest
To the extent Crysen alleges that plaintiffs owe prefiling interest on the interpleaded funds due to Avant’s delay in filing the First Interpleader Action, such an allegation is unfounded. Prefiling interest is owed by a disinterested stakeholder in an interpleader action only when it improperly and excessively delays the filing of the interpleader action.[1] There is no doubt that Avant is a disinterested stakeholder in this action because there is no dispute between plaintiffs and any defendants with regard to the interpleaded funds. By instituting this action Avant was not putting itself in an adverse position to any of the defendants. To the contrary, Avant did not dispute that it owed a debt to Crysen. It withheld the funds only because the writ of garnishment contained language generally prohibiting the payment of any debt by Avant to Crysen. Avant disavowed any further interest in the interpleader fund, and therefore any conflicting claims were asserted only among the defendants.
Avant did not improperly or excessively delay the filing of the First Interpleader Action. The affidavit of David W. Dykhouse asserts, and it is undisputed, that as soon as Avant became aware of the competing claims to the funds it attempted to persuade the defendants to settle their various claims among themselves so as to permit Avant to pay the debt it owed to Crysen without exposing itself to liability to any of the parties.[2] After it was clear that the *545 defendants would not resolve their dispute, plaintiffs then promptly filed the action.[3] In all, from the time Avant received the notice of garnishment and exerted efforts upon the parties to settle their respective claims only twenty-three days had elapsed. This was a reasonable time for such activity and cannot be said to constitute undue delay.
Moreover, since Crysen does not appear to be asserting any claim to the fund, there is no basis upon which it would be entitled to interest on it as the result of an alleged delay in commencing the interpleader action. Such a claim would accrue only to the party ultimately determined to be entitled to the fund because the basis for such an interest claim is that the party who is ultimately determined to be entitled to the money was deprived of the interest which should have been accruing to it prior to its deposit with the Court.
Crysen’s counterclaim also asserts a claim against Avant for interest on the $13,385,925.76 that is independent of Avant’s obligation to file an interpleader action without undue delay. Crysen’s claim is based on an alleged implied term of the contract between the parties. It contends that the parties’ agreement obligates Avant to pay interest on the amount owed to Crysen from the point the payment became due until the debt was satisfied, irrespective of the fact that there were competing claims to the money and that Avant was prevented from satisfying the debt pursuant to a court order. Plaintiffs dispute that this is a valid interpretation of the parties’ agreement under New York law.
The Agreement itself provides that:
This Agreement shall be governed by and construed in accordance with the laws of England. Any disputes hereunder shall be settled in the London High Court without recourse to arbitration.
At oral argument and in a subsequent supplemental brief, plaintiffs also asserted this clause as a defense to Crysen’s counterclaim. Forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable and unjust, or it is shown that the clause is invalid due to fraud, overreaching, or a strong public policy.[4]
However, Avant raised this defense for the first time at oral argument on its motion for judgment on the pleadings or summary judgment. It failed to raise an objection to venue either as an affirmative defense in its answer to Crysen’s counterclaim, on August 18, 1986, or in a prepleading motion brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Under Rule 12(h) of the Federal Rules of Civil Procedure, the defense of improper venue is waived if it is neither raised in a pre-answer motion nor included in a responsive pleading or an amendment to the pleading permitted as of right by Rule 15(a).[5] Therefore, although under the terms of the parties’ agreement Crysen’s contract claim against Avant will be governed by the laws of England,[6] Avant has *546 waived its right to object to litigating Crysen’s contract claim in this Court based on the forum selection clause.[7] Therefore, Crysen’s counterclaim is properly before this Court.
Crysen argues that it is an implied term of the sales contract between it and Avant, and a custom of the trade, that if Avant failed to pay the purchase price promptly, for any reason, interest would accrue on the amount due. Whether such an implied term and/or trade custom exists is an issue of fact that will be adjudicated under English law. Based on the record, it cannot be said that Avant has demonstrated that there are no material issues of fact in dispute as to the existence of such an implied term or custom of the trade. The motion to dismiss the counterclaim is denied.
Summary Judgment
At oral argument, BP conceded that when the writ of garnishment was served on Avant and the interpleaded funds deposited with this Court, Paribas, pursuant to financing statements filed in three states, had already perfected its security interest in all of Crysen’s accounts receivable and that this perfected interest was superior to BP’s lien. It is also undisputed that Paribas’ financing statements expired after this action was filed and the disputed funds were deposited with the Court because it failed to file continuation statements pursuant to § 9-403. Thus, the sole issue involved in the respective motions for summary judgment is whether, pursuant to the Uniform Commercial Code (“U.C.C.”) § 9-403(2), BP now has a superior interest in the disputed funds as a consequence of the expiration of Paribas’ financing statements.[8]
As will be discussed, to apply a retroactive “unperfection” to Paribas’ security interest, in light of the factual context of this case, would be clearly inequitable. Moreover, the instant case is beyond the protection of U.C.C. § 9-403(2), and therefore it would be inappropriate to apply it here.
U.C.C. § 9-403(2) provides in relevant part that:
The effectiveness of a filed financing statement lapses on the expiration of the five year period unless a continuation statement is filed prior to the lapse____ Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.
Ordinarily, the expiration of Paribas’ financing statement would have caused its security interest to have become unperfected as against a person who became a lien creditor before the lapse. In the usual case, § 9-403 operates retroactively to apply the unperfection of a party’s security interest to the time that another creditor obtained its lien. In this case, such a result would give BP’s interest priority over that of Paribas, provided BP had no notice of Paribas’ security interest at the time it *547 acquired its right to garnish Crysen’s debts under the order of the Texas court.[9]
Although this issue appears to be one of first impression, it is clear that on the facts of this case U.C.C. § 9-403(2) does not operate to divest Paribas of its existing priority. The reason the funds at issue were deposited into the Court in custodia legis was because there was a dispute among a number of parties as to who had the rightful claim to all or part of them. It is undisputed that as between Paribas and BP, Paribas’ interest in the funds was superior at the time the inter-pleader actions were commenced as well as when the funds were deposited with the Court because Paribas’ interest was validly perfected under financial statements that would not expire for another three or four months. When Avant deposited the inter-pleader funds with the Court, Crysen’s debts to Paribas far exceeded the total amount of those funds,[10] and therefore, because Paribas’ security interest in Crysen’s accounts receivable (from which these funds were derived) was superior to any other competing claim at that time, it was entitled to the entire amount of the fund. Thus, Paribas was only prevented from taking action to obtain possession of the funds at that time because the Court had acquired custody of them pending determination of the rights of the respective claimants.[11] The Court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner’s claim to them.[12] When the interpleader actions were commenced and the funds deposited in Court, the respective and relative rights of Paribas and BP, as well as other claimants, were in place, with Paribas’ right thereto superior to that of BP.
To allow the subsequent lapse of its perfections, due to its failure to file continuation statements, to divest Paribas of its superior interest in the funds would be to penalize it for the delay in collection that was forced on it by the initiation of a court proceeding. This would create the bizarre result that the very act of setting up the “trust” in order to protect and preserve property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights to the property. Such an outcome is not only inequitable, but it is also inconsistent with the notion that the funds are held by the Court pending determination of the rightful owner at the time of the interpleader.
In a sense, it might be said that Paribas required no further security interest or perfection because it had already asserted its interest in the funds at a time when its interest was valid and controlling. It is both reasonable and equitable to judge Paribas’ assertion of its interest as being in place at the point when, under ordinary circumstances, its assertion of that interest would have resulted in it obtaining possession.
Moreover, preserving the parties’ rights as of the time the funds were deposited into the Court does not conflict with the policies behind the U.C.C. notice provisions. Several facts demonstrate that filing a continuation statement under § 9-403(3) was unnecessary. After the interpleader actions were commenced, the parties filed answers which clearly set forth the basis of their claims, putting the Court, each other, and the public on notice. Even more significantly, during the pendency of the inter-pleader actions the Court was openly in possession and control of the funds for the express purpose of determining which party was the rightful owner. Thus, any subsequent creditors would not need the notice which a continuation statement is intended to supply, and certainly the purpose of requiring the filing of a continuation state- *548 merit would not be served with regard to existing creditors who already had notice of the creditor’s perfected security interest and knowledge of the interpleader actions themselves on the date the interpleader actions were filed.[13]
Finally, the retroactive unperfection provided by § 9-403(2) has no application in this case because that provision was only intended to provide a meaningful way to prioritize interests asserted to collateral after a lapse of the financing statement has occurred.
U.C.C. § 9-301(l)(b) provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor without knowledge of the security interest and before it is perfected. In the context of the rules of priority set forth under 9-301(l)(b), U.C.C. § 9-403(2) provides for a retroactive application of an “unperfection” in order to avoid the irreconcilable circular priorities that would otherwise result under this rule.[14]
This case involves no such concerns. Paribas asserted its rights to the collateral, as against BP, at a time when its interest was clearly superior to BP’s interest and thus BP is not placed in the position of being unfairly deprived of the ability to assert its lien as a superior interest against a security interest which has been deemed unperfected at the time both interests are asserted. Moreover, the circularity of priorities which § 9-403(2) seeks to avoid cannot arise in this case.[15] To hold that § 9-403(2) operates in this case to divest Paribas of the valid rights it had asserted to the collateral prior to the lapse would be to put form over substance.
Based on the nature of the deposit of an interpleader stake into the Registry of the Court, the point at which the rights to the stake were asserted, equitable considerations, and the policy behind the U.C.C. provisions discussed above, BP’s motion for summary judgment is denied and Paribas’ cross-motion for summary judgment is granted. All monies currently on deposit with the Registry of this Court in these consolidated actions are to be released to Paribas, whose claim of amounts due from BP concededly is far in excess of the amount deposited in Court.
Conclusion
Plaintiffs’ motion for discharge, a permanent injunction, and the awarding of their reasonable costs and attorneys’ fees in the amount of $30,000.00, is granted, and their motion for an order dismissing Crysen’s counterclaim is denied. BP’s motion for summary judgment is denied and Paribas’ cross-motion for summary judgment is granted.
So ordered.

. See John Hancock Mut. Life Ins. Co. v. Doran, 138 F.Supp. 47, 49 (S.D.N.Y.1956); Aetna Life Ins. Co. v. Du Route, 123 F.Supp. 736, 741 (S.D.N.Y.1954); New York Life Ins. Co. v. Cooper, 76 F.Supp. 976, 979 (S.D.N.Y.1944).

. See Dykhouse Aff. at 2-3.

. id.

. See AVC Nederland B.V. v. Atrium Invest. Partnership, 740 F.2d 148, 156 (2d Cir.1984); Thomas v. Price, 631 F.Supp. 114, 125-36 (S.D.N.Y.1986); Credit Francais v. Sociedad Financiera, 128 Misc.2d 564, 490 N.Y.S.2d 670 (Sup.Ct.1985). See also The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

. See Leif Hoegh & Co., v. Alpha Motor Ways, Inc., 534 F.Supp. 624 (S.D.N.Y.1982); United States Ex. Rel. Flemings v. Chafee, 330 F.Supp. 193 (E.D.N.Y.1971), aff'd, 458 F.2d 544 (2d Cir. 1972), rev'd on other grounds sub. nom., 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); see also Generation Marketing, Inc. v. Lead Marketing International, Inc., No. 86-0493, slip op. (S.D.N.Y. July 11, 1986) [Available on WEST-LAW, DCTU database] (defendants’ failure to assert seasonably the issue of proper venue based on forum selection clause waived that defense); Comitex Knitters Ltd. v. Lockton Indus., Inc., No. 81-4769, slip op. (S.D.N.Y. May 17, 1982) (same).

. Under New York’s conflict of laws doctrine, which this Court is required to apply, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), New York Courts would honor the parties' choice of law provision. See Freedman v. Chemical Constr. *546 Corp., 43 N.Y.2d 260 (footnote), 401 N.Y.S.2d 176, 179, 372 N.E.2d 12 (footnote) (1977); North American Bank, Ltd. v. Schulman, 123 Misc.2d 516, 474 N.Y.S.2d 383, 385 (Co.Ct.1984); MonShore Management, Inc. v. Family Media, Inc., 584 F.Supp. 186 (S.D.N.Y. 1984); C.B.S. Inc. v. Tucker, 412 F.Supp. 1222, 1226 n. 5 (S.D.N.Y. 1976). Crysen has specifically asserted its right to have English law apply under the terms of the Agreement. See Kennedy Aff. at para. 7.

. Even if it were argued that because the contract calls for the action to be adjudicated in a court of a foreign country and not in another United States district court the issue is not strictly one of venue, “the policy requiring issues as to the proper forum for the action to be resolved early in the litigation, embodied in Rule 12, is not limited to that rule.” Comitex Knitters Ltd. v. Lockton Indus., Inc., No. 81-4769, slip op. (S.D.N.Y. May 17, 1982). The Supreme Court made it clear in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) that forum selection clauses should not be enforced when unreasonable under the circumstances. To enforce the clause when it has been asserted as a defense for the first time at oral argument on a motion, after the opposing party had already filed its responsive briefs, and five months after Avant filed its answer to the claim would be unreasonable.

. The relevant U.C.C. provisions in New York, Texas and California are substantively the same, and therefore they will not be addressed separately.

. See N.Y. U.C.C. § 9-301(l)(b); Texas Bus. & Com. Code § 9.301(a)(2); California Com. Code § 9302(l)(b).

. See Dinell Aff. at 2.

. Cf. Mid-Jersey Nat. Bank v. Fidelity-Mortgage Investors, 518 F.2d 640, 643 (3d Cir.1975).

. Cf. Clarkson Co. Ltd. v. Shaheen, 716 F.2d 126, 130 (2d Cir.1983).

. Cf. Matter of Chaseley's Foods, Inc., 726 F.2d 303, 308 (7th Cir.1983).

. Without a retroactive unperfection, a prior lien creditor (“A”) would be subordinate to the party with the lapsed security interest ("B") since he would have obtained his lien after perfection of B’s interest, but A would have priority over any subsequent lien creditor ("C”) since A would have obtained his lien prior to subsequent lien creditors. However, C would have priority over the lapsed creditor B because B’s security interest was now unperfected at the time C obtained his lien. This would create irreconcilable priorities in any attempt to dispose of the collateral because A would be subordinate to B who would be subordinate to C who would be subordinate to A.

. The circularity problem is avoided here by the fact that no third-party creditor of Crysen could have obtained an interest in the funds after their deposit into the Registry of the Court. A subsequent creditor could only attach such interests to the funds as Crysen retained in them after their deposit with the Court. Cf. Clarkson Co. Ltd. v. Shaheen, 716 F.2d 126, 129 (2d Cir. 1983). Crysen, however, only has the right to receive an amount of the funds in excess of what is necessary to satisfy the other parties’ valid claims. Id. at 130. Because the valid claims of BP and Paribas together exceed the funds now deposited with the Court, Crysen retains no interest in those funds, and therefore any subsequent third-party creditors would be unable to assert a valid interest.